IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BERNARD J. GRISBY, JR.,           )
                                  )
            Plaintiff,            )
                                  )
                                  )     CIV-07-985-D
v.                                )
                                  )
MICHAEL J. ASTRUE,                )
  Commissioner of Social Security )
  Administration,                 )
                                  )
            Defendant.            )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(i), 423.   Defendant has answered the

Complaint and filed the administrative record (hereinafter TR___), and the parties have

briefed the issues.   The matter has been referred to the undersigned Magistrate Judge for

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it

is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his application for benefits on April 20, 2004, and alleged that he

became disabled on January 2, 2003, when he was injured on the job. (TR 38-40).  Plaintiff

described constant right shoulder and arm pain, constant lower back pain radiating down both legs, and falling due to cervical degenerative disc disease. (TR 42). Plaintiff also described a lack of grip strength in his right hand, lack of full range of motion in his neck, and numbness in his legs. (TR 69). Plaintiff stated that he stopped working on January 2, 2003, and that his doctor ordered him not to work after that date. (TR 43). Plaintiff described previous work as a truck driver. (TR 43, 51, 56).

Medical records show that Plaintiff was involved in an accident in January 2003 in which he was rear-ended by a semi-trailer truck while he was sleeping in his semi-trailer truck. (TR 106). Plaintiff sought medical treatment at a hospital on January 4, 2003, complaining of neck and back pain and pain in the fifth finger of his right hand. (TR 106). The diagnosis recorded by the treating physician was avulsion fracture of the right fifth digit and acute cervical/lumbar strain. (TR 107). A splint was placed on Plaintiff's fractured finger, and he was prescribed pain medication. (TR 107). An x-ray conducted on January 4, 2003, showed degenerative changes in Plaintiff's cervical spine at one level without other abnormalities. (TR 201). Plaintiff underwent physical therapy sessions. (TR 190). Dr. Boyer examined Plaintiff on January 8, 2003, and noted that straight leg raising test was negative, range of motion was mildly decreased in his lumbar spine with pain, sensation was normal, and cervical spine range of motion was decreased with right rotation, right side bending, and left side bending with pain. (TR 189). Dr. Boyer noted his diagnosis of cervical and lumbosacral strain and right fifth finger fracture. (TR 189). Plaintiff was advised not to use his right hand and not to drive a company vehicle. (TR 189). Plaintiff underwent more

2

physical therapy, and Dr. Boyer prescribed pain medication for his neck and back strain on January 16, 2003. (TR 175).   Dr. Boyer released Plaintiff to return to work on January 16, 2003, with restrictions of no repetitive lifting, pushing, or pulling over ten pounds and limited use of the right hand. (TR 171, 174).   In January 2003, Plaintiff underwent surgery with the insertion of pins to repair his fractured finger. (TR 87). The pins were later removed.  (TR 123).   On January 24, 2003, Plaintiff was again advised by Dr. Boyer that he was released to return to work with the same restrictions. (TR 166).   On January 29, 2003, Plaintiff sought treatment from Dr. Jenkins. (TR 260).   Dr. Jenkins examined Plaintiff and noted Plaintiff required further evaluation and testing. (TR 260-261).   In June 2003, Dr. Jenkins noted that three epidural injections in Plaintiff's neck and back had not relieved Plaintiff's continuing complaints of low back and neck pain, that Plaintiff's diagnosis was lumbar and cervical degenerative disc disease, and that conservative treatment had not been successful. (TR 259).

In connection with a workers' compensation claim filed by Plaintiff, Plaintiff underwent an orthopedic evaluation conducted by Dr. Fellrath in August 2003.  Dr. Fellrath reported that Plaintiff complained of right arm numbness and tingling, bilateral lower extremity weakness, and right arm and leg radicular pain, all of which occurred intermittently. (TR 210-211).  In a physical examination, Dr. Fellrath noted that Plaintiff exhibited full range of motion of his cervical and lumbar spine, shoulders, elbows, hips, and knees, full strength in his upper extremities and lower extremities, intact sensation, and no neurologic deficits. (TR 211-212).   X-rays reportedly showed diffuse degenerative changes in the cervical and lumbar spines without instability.  Dr. Fellrath noted the x-ray findings and cervical and

3

lumbar MRI findings of degenerative changes were "consistent with age." (TR 212).   Dr. Fellrath also noted that the cervical MRI showed "no pathology ...consistent with his symptomatology." (TR 212).   Dr. Fellrath's diagnosis was "[h]istory of cervical and lumbar sprain with possible nonphysiologic component and minimal objective evidence of injury." (TR 212).   With no objective evidence of significant pathology in the cervical and lumbar spines, Dr. Fellrath indicated Plaintiff would not be considered totally and temporarily disabled and he would not recommend further medical treatment for these areas.  (TR 212). However, Dr. Fellrath recommended a neurologic evaluation of Plaintiff to determine whether there were "underlying peripheral neurologic problems" occurring "outside of his cervical and lumbar spine" causing Plaintiff's continued complaints   (TR 205, 212).     Plaintiff subsequently underwent electromyogram and nerve conduction studies which were interpreted in January 2004 by the neurologist, Dr. Shipley, as showing nerve root irritation at one level of Plaintiff's cervical spine. (TR 262-263).

Plaintiff was referred by the worker's compensation court for an independent medical examination by a neurologist, Dr. Friedman. (TR 220).   Dr. Friedman reported that he obtained a history from Plaintiff and evaluated Plaintiff on April 8, 2004. (TR 220). Dr. Friedman noted that Plaintiff complained of pain throughout his cervical region and radiating to his right shoulder and down the right arm to the hand with numbness and tingling, exacerbated by any neck movement. (TR 221).  According to Dr. Friedman's report, Plaintiff exhibited slightly decreased cervical range of motion, normal gait, some giveway weakness in his right upper extremity without focal motor weakness, and intact reflexes. (TR 221).  Dr.

4

Friedman noted that an MRI of Plaintiff's cervical spine was obtained and that the MRI showed multilevel cervical spondylitic changes with minimal left sided disc bulges and no evidence of significant thecal sac or nerve root compression and no obvious right sided pathology. (TR 222).  Dr. Friedman opined that no medical treatment or surgical intervention was recommended, that Plaintiff was no longer temporarily totally disabled as related to his cervical spine, and that Plaintiff was "released from care without specific restrictions."  (TR 222).

In July 2004, Plaintiff underwent a consultative examination for the agency conducted by Dr. Dougherty. (TR 226).  Dr. Dougherty reported that Plaintiff complained of constant pain in his cervical spine region, radiating down his left upper arm, and constant pain in his lumbar spine which radiated down both legs and with intermittent ankle numbness. (TR 226). Plaintiff also complained of persistent pain in his right little finger. (TR 227).  Plaintiff reportedly estimated he could stand for 15 to 20 minutes, sit for 15 to 20 minutes, lift 45 pounds, and walk one block. (TR 227).  Dr. Dougherty noted Plaintiff walked with a cane and had a "slightly antalgic gait" although Plaintiff's gait appeared to be stable and safe. (TR 227). The examination revealed pain with movement of the cervical spine with unlimited range of motion of the neck and shoulders, a history of pain in the lumber spine with limitation of motion of the back and both hip joints, limitation of motion of the right little finger, and obesity.  (TR 228).

Plaintiff underwent a second consultative examination for the agency conducted by Dr. Chaudry on August 8, 2005. (TR 242).  Dr. Chaudry reported that Plaintiff was not taking

medications and had no regular medical doctor. (TR 242). The diagnostic impression was left knee osteoarthritis, chronic neck and lower back pain, and no objective evidence of neurologic deficits. (TR 244). Significantly, Dr. Chaudry noted that Plaintiff exhibited normal range of motion of all extremities, full strength, no muscular wasting, normal reflexes and sensation, a safe and steady but slow gait, the ability to walk without assistance, the ability to get on and off the examining table without assistance, normal hand grip strength, and normal fine and gross manipulative movements. (TR 244).

Plaintiff's application was administratively denied initially and on reconsideration. (TR 15, 30). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Thompson ("ALJ") on August 18, 2006. (TR 280-311). Subsequently, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 15-20). The Appeals Council declined to review this decision. (TR 3-6). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196

F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992).  However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520(b)-(f) (2007); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

7

III. <u>Analysis</u>

Following the requisite sequential evaluation procedure, the ALJ found at step one that Plaintiff had worked from his alleged onset date of January 2, 2003, through May 2005, according to Plaintiff's statements in the record. (TR 17). The ALJ found at step two that Plaintiff had severe impairments due to disorders of the spine and obesity. (TR 17). At step three, the ALJ found that Plaintiff's impairments were not *per se* disabling under the agency's Listing of Impairments. (TR 18-19). At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work. Considering Plaintiff's past relevant work as a truck driver, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because he retained the capacity to perform his previous job as a truck driver. (TR 19-20).

Plaintiff contends that the ALJ erred in determining that Plaintiff's allegation of disabling pain was not credible. Specifically, Plaintiff contends that the ALJ provided inadequate reasons for discounting the credibility of Plaintiff's allegation of disabling pain. No physician found that Plaintiff was disabled due to severe pain. However, Plaintiff reported he experienced constant pain in his neck and back and that the pain radiated into his arms and legs. The ALJ acknowledged that Plaintiff had a pain-causing impairment due to disorders of the spine. Thus, Plaintiff was "entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence." <u>Kepler v. Chater</u>, 68 F.3d 387, 390 (10th Cir. 1995).

The framework for evaluating a claim of disabling pain is well established. The ALJ

8

must consider (1) whether the claimant has established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain is in fact disabling. Luna v. Bowen, 834 F.2d 161, 163-164 (10th Cir. 1987). "Objective" evidence consists of physiological and psychological evidence that can be discovered and substantiated by an examining doctor on the basis of external testing. Id. at 162. "Subjective complaints of pain must be evaluated in light of [the claimant's] credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the province of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna, 834 F.2d at 165-166.

The ALJ found that Plaintiff's allegations of disabling pain were not credible because they were inconsistent with the objective medical evidence. The ALJ reviewed the medical evidence in the record and stated that he had also considered Plaintiff's subjective statements and the other factors recognized in Hargis as important in making a credibility determination.

(TR 18-19).  The ALJ noted that Plaintiff's treating physician had reported that surgery and further medical treatment were not necessary and had released Plaintiff to return to work without restriction.  (TR 19).  Both Dr. Fellrath and Dr. Friedman noted that Plaintiff was no longer temporarily disabled and that no surgery or further medical treatment of Plaintiff was needed.  Dr. Friedman released Plaintiff to return to work without restrictions.  The ALJ did not err in relying on the statements of Plaintiff's treating and examining physicians concerning the extent of his impairments.

The ALJ also noted as support for his credibility determination Plaintiff's testimony that his commercial driver's license was valid at the time of the hearing in August 2006. (TR 19).  Plaintiff contends that the fact that Plaintiff had a "valid driver's license" was irrelevant to the credibility decision. However, Plaintiff testified, and the ALJ appropriately noted, that Plaintiff had a valid commercial driver's license.  A commercial driver's license is very different from a noncommercial driver's license, as it allows the holder to drive commercial vehicles.  Although the ALJ did not clearly explain the relevance of this finding, it is assumed that the ALJ was recognizing that Plaintiff had maintained the license in order to return to his previous work as a truck driver.  The ALJ set forth valid reasons for discounting the credibility of Plaintiff's allegation of disabling pain. Although the ALJ did not expressly discuss Plaintiff's subjective statements in connection with the disability finding, the ALJ's credibility determination is supported by substantial evidence in the record.  Under these circumstances, the ALJ's credibility determination should not be disturbed.

Plaintiff also contends that the ALJ erred in finding at step one that Plaintiff continued

to work until May 2005, although he alleged that he became disabled on January 2, 2003.
There is some evidence in the record suggesting that Plaintiff continued to work after he
alleged he became unable to work in January 2003 due to his on-the-job injuries. (TR 43, 56,
86).  However, Plaintiff testified that he had not worked since his alleged onset date of
January 2, 2003. (TR 285).  Plaintiff contends that the alleged error is relevant because of
varying opinions by nonexamining agency physicians concerning Plaintiff's RFC for work.

As the ALJ recognized in his decision, the state agency medical consultant, Dr.
Woodcock, completed an assessment of Plaintiff's RFC for work in July 2004.   In this
assessment, the physician opined that Plaintiff was capable of performing work at the medium
exertional level, including the ability to occasionally lift 50 pound objects, frequently lift 25
pound objects, stand and/or walk for about 6 hours in an 8 hour workday, sit about 6 hours
in an 8 hour workday, and the unlimited ability to push and/or pull. (TR 235).  Dr. Woodcock
opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl. (TR
236).  As the ALJ also recognized in his decision, a second state agency medical consultant,
Dr. Mungul, completed an RFC assessment in August 2005 in which the physician found that
Plaintiff was capable of performing the full range of medium work. (TR 249-256).

The ALJ noted in his decision that both of the opinions offered by Drs. Woodcock and
Mungul were consistent with Plaintiff's medical records.   However, the ALJ expressly
adopted the RFC findings as set forth by Dr. Mungul.  Neither of these physicians treated or
examined Plaintiff, and it is ultimately in the ALJ's discretion to weigh and resolve
evidentiary conflicts.  Rutledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000).  There is

substantial evidence in the record to support the RFC finding for a full range of medium work, particularly the August 2003 report of Dr. Fellrath that Plaintiff was not disabled or in need of further medical treatment for his cervical and lumbar sprain (TR 212) and Dr. Friedman's April 2004 report in which Dr. Friedman released Plaintiff to return to work without restrictions. (TR 220-224).

Because there is substantial evidence in the record to support the ALJ's finding that Plaintiff is capable of returning to his previous job as a truck driver,[1] it is not necessary to reach the issue of whether Plaintiff worked after his alleged disability onset date.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____July 3rd_____, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

---

[1] Plaintiff does not question the ALJ's finding that Plaintiff's past relevant work as a truck driver is "actually and generally performed" at the medium exertional level.  (TR 20).

herein is denied.

ENTERED this _____13th_____ day of _____June_____, 2008.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE